IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTHONY SCOTT COLEMAN,

        Plaintiff,

v.    CIVIL ACTION NO.    2:24-cv-00654

CHRIS KENDALL, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a Partial Motion to Dismiss, filed by the City of Dunbar, [ECF No. 8], and a Motion to Dismiss filed by Chris Kendall, Chad Shafer, and Preston Oxley Todd Hannah (collectively "Officer Defendants"), [ECF No. 11]. Plaintiff Anthony Scott Coleman ("Plaintiff") responded in opposition to both motions, [ECF Nos. 18, 19]. The City of Dunbar, as well as the Officer Defendants replied, [ECF Nos. 20, 21]. For the following reasons, Defendants' motions are **GRANTED** in part and **DENIED** in part.

    **I.**    **Background**

Plaintiff brings this lawsuit against three named Dunbar Police Officers—Chris Kendall ("Defendant Kendall"), Chad Shafer ("Defendant Shafer"), Preston Oxley ("Defendant Oxley")— as well as the City of Dunbar ("City"). [ECF No. 1, at 1]. Plaintiff also notes that various additional persons, including City and Dunbar Police officials, have committed similar violations. *Id.* at 2. However, Plaintiff has not named these parties because their identities may be known through additional discovery. *Id.*

On July 19, 2023, Plaintiff drove down 10th Street in Dunbar, Kanawha County, West Virginia, intending to visit a McDonald's restaurant but then realized it was closed. *Id.* at 2. After this realization, Plaintiff exited the McDonald's property and continued driving. [ECF No. 18, at 2]. Immediately after, Defendant Preston Oxley flashed his police cruiser lights and pulled the Plaintiff over. *Id.* Body camera footage obtained from the officers on the scene show that Defendant Oxley was the first officer the Plaintiff encountered when Oxley requested Plaintiff's license and registration. *Id*. at 3. Upon taking Plaintiff's license and registration, Plaintiff claims Defendant Oxley returned to his cruiser and requested more information on the Plaintiff. *Id.* Subsequently, Defendant Oxley returned to the Plaintiff, and requested he step out of his vehicle. *Id.* Plaintiff refused. *Id.*

Defendant Kendall then arrived on the scene, and Defendant Oxley notified him that Plaintiff may have a liquor bottle in his hand. *Id.* After a small discussion, both officers approached Plaintiff's vehicle and again asked Plaintiff to exit. *Id.* Plaintiff alleges that then, Defendant Kendall reached into Plaintiff's vehicle and stated, "I'm going to fuck you up." *Id*. Body camera footage shows Defendant Kendall then screaming "Don't fucking touch me, get off of me," while his arm was in the vehicle gripping Plaintiff's left hand. *Id.* at 3. Plaintiff states that at no time did he "have a hold" on Defendant Kendall. *Id.* Rather, Plaintiff states body cam footage shows that Defendant Kendall opened Plaintiff's car door, grabbed Plaintiff by the head and "cut Plaintiff's seat belt with a knife." *Id.* at 4.

After these events, Defendant Shafer arrived on the scene with his K9 "Molly" (K9). *Id.* After approaching the vehicle with the K9, Defendant Oxley is shown screaming at Plaintiff: "You want to get dog bit, then you better fucking comply." *Id.* It was then Defendant Shafer, gave a

2

command, and then released the K9 that immediately attacked Plaintiff's legs. *Id.* With the K9 still clamped to Plaintiff's leg, he was shoved to the ground and handcuffed. *Id.*

While handcuffed, Plaintiff alleges Kendall struck him multiple times and pounded his head against the payment. *Id.* The K9 Molly did not release the Plaintiff nor was she ever commanded to do so. After seeing the extent of Mr. Coleman's injuries, Defendant Shafer called for Emergency Medical Services ("EMS"). *Id.* at 4. While awaiting EMS assistance, Plaintiff was detained. *Id.* at 5.

Kanawha County Emergency Ambulance Authority ("KCEAA") arrived on the scene and discovered Plaintiff "thrown headfirst in the back of the cruiser on his stomach, his hands cuffed behind his back." *Id.* EMS personnel treated the Plaintiff's injuries while he remained in the back of the police cruiser. *Id.* Given the extent of his injuries, EMS personnel had trouble determining an appropriate way to remove the Plaintiff. *Id.* Subsequently, Defendant Oxley grabbed Plaintiff by the legs and pulled him out of the police cruiser while he screamed in pain. *Id.* Plaintiff claims that throughout this process, Defendant officers taunted him using various forms of profanity. Once removed from the cruiser, EMS personnel assessed Plaintiff's injuries from the K9 attack. *Id.* at 5. During this assessment Defendant Shafer is heard on body camera footage stating, "see the advantage of having a dog." *Id.* at 6.

Plaintiff was then transported to the emergency department of Thomas Memorial Hospital for treatment. Plaintiff was observed to have varying injuries and self-assessed his pain levels as "10/10 on the numerical pain scale." *Id.* at 6. When Plaintiff was eventually discharged from the hospital, he was transported to the Dunbar Police Station and then to South Central Regional Jail.

Plaintiff Anthony Scott Coleman now sues Defendant Officers Chris Kendall, Chad Shafer, and Preston Oxley, in their individual capacities, and the City of Dunbar, a municipality and

political subdivision, to recover damages and other cognizable relief for his personal injuries and other damages stemming from the use of excessive force against him during the events on July 19, 2023, at or near 10th Street in Dunbar, Kanawha County, West Virginia. Accordingly, Plaintiff brings eight causes of action: (1) excessive force against Defendant Kendall; (2) excessive force against Defendant Shafer; (3) excessive force against Defendant Oxley (4) *Monell* liability[1] against the City of Dunbar; (5) negligent training against the City of Dunbar; (6) negligent supervision against the City of Dunbar; (7) intentional infliction of emotional distress (outrage) against Defendants Kendall, Shafer, and Oxley; and (8) civil conspiracy against Defendants Kendall, Shafer, and Oxley. [ECF No. 1, at 11–36]. Plaintiff requests compensatory damages, special damages for lost earnings and future medical care, attorneys' fees, and punitive damages. *Id.* at 37.

      Defendants Chris Kendall, Chad Shafer, and Preston Oxley filed a joint motion to dismiss the complaint in part. [ECF No. 11]. In this motion, the Defendants argue that Plaintiff's civil conspiracy claims against the three officers are barred by the intra-corporate conspiracy doctrine. [ECF No. 12, at 4]. Further, they assert that Plaintiff's claims for excessive force premised upon the Eighth Amendment and Fourteenth Amendment should fail as a matter of law and be dismissed. *Id.* at 5. The City of Dunbar also has filed a motion to dismiss the complaint in part. [ECF No. 8]. In this motion, the City argues that Plaintiff's municipal liability claim fails because it is premised on an existing Eighth and Fourteenth Amendment violation, and that Plaintiff's "failure to train" municipality claim, negligent training, and negligent supervision claims fail as a matter of law. [ECF No. 9, at 9–12]. Plaintiff has responded in opposition to both motions [ECF Nos. 18, 19], and Defendants have replied [ECF Nos. 20, 21]. The matter is now ripe for review.

---

[1] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 570. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

### III.     Discussion

   *A. Counts I, II and III: Excessive Force*

Defendants Kendall, Shafer and Oxley argue that Counts I, II and III must be dismissed principally for a single reason. In short, Defendants argue that Plaintiff's excessive force claims against these Defendants are impermissibly premised upon the Eighth and Fourteenth Amendments. [ECF No. 19].

The United States Supreme Court has been explicit in its determination that excessive force claims that arise "in the context of an arrest or investigatory stop of a free citizen," are characterized appropriately as invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "It is clearly established that the Fourth Amendment confers upon individuals a constitutional right to be free from excessive force during the course of an arrest." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 769 (S.D. W. Va. 2015) (citing *Graham*, 490 U.S. at 394 (1989)). Excessive force occurs when an officer uses more force than is objectively reasonable in the situation. *Graham*, 490 U.S. at 397. To determine whether the use of force was objectively reasonable, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id*. at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). This inquiry is fact specific and requires courts to analyze factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The seriousness of the plaintiff's injuries is also relevant. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

However, this analysis is not always appropriate. Section 1983 suits are not governed by a single generic standard, and often rely on a determination of the specific constitutional right

infringed by the application of force at issue. *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see also Graham*, 490 U.S. at 393 (1989) (rejecting the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard" and that § 1983 merely provides a method for vindicating other federal rights). The Fourth Amendment applies principally to all decisions and uses of force during the detainment of the accused but not to the conditions of confinement after an arrest. *Robles v. Prince George's Cty.*, 302 F.3d 262, 268 (4th Cir. 2002) (holding that once the single act of detaining an individual has been accomplished, the Fourth Amendment, and its accompanying standards, cease to apply).

Plaintiff, throughout both his complaint and additional briefing, refers to the violation of his Fourth, Fourteenth and Eighth Amendment rights. Specifically, Plaintiff states that it was a combination of Defendant Kendall reaching into the vehicle to grab him, Defendant Shafer commanding K9 Molly to attack his legs while he was still in his vehicle, and Defendant Oxley also assisting in the removing of the Plaintiff, that initially gave rise to his claim. [ECF No. 1]. However, contrary to the Defendant's assertion, Plaintiff's claims also are related to the alleged conduct after he was sufficiently detained. The Defendants concede "for a pre-trial detainee, the proper standard comes from the Fourteenth Amendment." *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024); *See* [ECF No. 21, at 5]. However, Defendants essentially argue that the Plaintiff does not allege any conduct that fits under this category and fails to correctly state the appropriate standard.

As an initial matter, Defendants fail to acknowledge Plaintiff's explicit mention of the appropriate standard and his reason for applying it. In relevant part Plaintiff states:

> Plaintiff acknowledges that his Complaint makes several references to his rights under the Eighth Amendment of the United States Constitution. However, Plaintiff does not intend to present his excessive force claims against the Defendant Officers for analysis under that provision. Rather, Plaintiff refers to his rights protected by the Eighth Amendment as

examples of "clearly established law" violated by the Defendants that preclude qualified immunity. However, Plaintiff's excessive force claims against the Defendant Officers (Counts I, II, III) are asserted under the Fourth Amendment, and to the extent those actions continued after his completed arrest, under the Fourteenth Amendment.

[ECF No. 18, at 12–13]. Even beyond the explicit mention of the Plaintiff directly relying appropriately on the Fourth and Fourteenth Amendment, the Plaintiff seeks damages from actions that occurred *after* his initial detainment. As the facts above show, EMS personnel arrived on the scene to the Plaintiff who had been apparently "thrown headfirst into the police cruiser". In addition, rather than EMS personnel removing the Plaintiff, Plaintiff claims that Defendant Oxley with assistance grabbed Plaintiff by the legs and proceeded to pull him out of the police cruiser while he screamed in pain. [ECF No. 1].

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson*, 679 F.3d at 288 (4th Cir. 2012). As the Defendants state, "[t]he point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky[.]" *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). However, the Plaintiff appropriately identifies actions both during his arrest and after that could warrant a claim for relief. Taking the facts as alleged in the complaint, the Fourth and Fourteenth Amendment may apply. Accordingly, Defendant's motion is therefore **DENIED** as to Counts I, II and III.

    B. *Count IV: Monell Liability*

Plaintiff brings a cause of action against Defendant City of Dunbar for municipal liability. [ECF No. 1, ¶¶ 117–146]. The City of Dunbar asserts that this claim must fail because it is premised upon both the Eighth and Fourteenth Amendments. [ECF No. 9, at 4].

*Monell* allows an individual to bring a § 1983 claim against a local government when its formal policies or customs result in a deprivation of rights under the Constitution. *See Braley v.*

*Thompson*, 2:22-cv-534, 2023 WL 2351881, at *5 (S.D. W. Va. Mar. 3, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)). Municipalities are "persons" within the meaning of § 1983 and thus can be sued when they inflict a constitutional injury. *Wickline v. Cumberledge*, No. 2:23-CV-00799, 2024 WL 3416282 (S.D. W. Va. July 15, 2024) (citing *Franklin*, 64 F.4th at 535). Municipalities inflict constitutional injuries where their "official policy or custom" causes the deprivation. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). This can occur in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id.* A plaintiff must prove both that such policy or custom existed and that it caused or inflicted the alleged injury. *See Franklin*, 64 F.4th at 536; *see also Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that a local government can only be liable "when there is a deprivation of constitutional right *caused* by" the policy) (emphasis in original). However, "isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice." *Lytle*, 326 F.3d at 473.

Just as above, Defendants fail to state correctly what rights the Plaintiff is asserting in his Complaint. Contrary to Defendant's argument, I have determined that Plaintiff's excessive force claims against the Officer Defendants (Counts I, II, III) are appropriately stated under the Fourth Amendment. Further, the Complaint states bodycam footage shows that "Patrolman Oxley grabbed Plaintiff by the legs and pulled him out of the cruiser, and Plaintiff screamed in pain." [ECF No. 1, at 10]. Therefore, as the facts suggest, there are several alleged actions that continued after Plaintiff's completed arrest. Thus, the Fourteenth Amendment does apply. Given that the

Defendants argument fails with regards to the Plaintiff's reliance on the appropriate amendments, analysis on the applicability of *Monell* liability is not appropriate at this stage.

As stated below, Plaintiff withdraws his claims for negligent training asserted in Count V and negligent supervision asserted in Count VI. However, for *Monell* liability to apply, the Plaintiff must point to formal policies or customs that resulted in a deprivation of rights under the Constitution. *See Braley*, 2023 WL 2351881, at *5 (citing *Monell*, 436 U.S. 658 (1978)). As such I find it appropriate to briefly address Plaintiff's "failure to train" and "persistent practice" theories below.

   1. Failure to Train

For a failure to train claim, a plaintiff must "identify particular deficiencies in a training program that led to the plaintiff's injuries." *Barnes v. Montgomery Cnty.*, 2023 WL 8454633, at *3 (D. Md. Dec. 6, 2023). To prevail on this claim, one must allege "facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training[.]" *Roberts v. City of Hagerstown, Maryland*, 2024 WL 640029 at *16 (D. Md. 2024)). In defense of his failure to train claim, Plaintiff asserts the following:

> The "nature of the training" is the lack of training on the appropriate use of force that is apparent from the repeated incidents of excessive force involving the Defendant City's employees. The lack of training was a "deliberate or conscious choice by the municipality" as shown by the various allegations that Defendant City was on actual notice of its employees' repeated use of excessive force from multiple citizen complaints and multiple civil lawsuits, and the Defendant City's inaction despite that notice. The "officer's conduct resulted from said training" is apparent from the allegations that Defendant City's employees were not being trained on the proper use of force, and the use of excessive force used by the Defendant Officers against the Plaintiff.

[ECF No. 19, at 11]. Beyond mere allegations, Plaintiff supports these assertions through a series of citations to the City's alleged history of ignoring use of force claims and repeated pattern of

failing to restructure their training programs. *Id.* at 10–11. These allegations, when joined with a series of citations to the alleged inadequate training structure employed by the city, rise above the 12(b)(6) standard. It is not appropriate to dismiss the *Monell* municipal liability claim on these grounds.

2. *Persistent Practice*

Finding there to be an underlying formal policy or custom that resulted in a deprivation of rights under the Constitution, as noted under *Braley*, my analysis need not continue. However, given the parties' briefing, I find it appropriate.

To be liable under the "persistent practice" method, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers as a matter of specific intent or deliberate indifference to correct or terminate the improper custom and usage." *Howard v. City of Durham*, 68 F.4th 934, 953 (4th Cir. 2023) (internal quotations omitted). In other words, "a pattern of comparable practices" must be known to the policymakers. *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987). "Sporadic and isolated" incidents do not suffice under *Monell*; only "widespread or flagrant violations will." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (internal quotations omitted) (citing *Spell*, 824 F.2d at 1387).

Plaintiff states the existence of at least five recent lawsuits against the City of Dunbar for the same conduct at issue here and multiple citizens' complaints. [ECF No. 19, at 10–11]. Plaintiff has sufficiently alleged that the existence of these lawsuits has put the city on notice of an alleged pattern of its officers using excessive force, which caused Plaintiff's injuries here. As such, it is premature to dismiss the *Monell* claim at the motion to dismiss stage. *See Peterson v. Prince George's Cnty.*, No. PWG-16-1947, 2017 WL 2666109, at *4 (D. Md. June 21, 2017) (declining

to dismiss a *Monell* claim at the motion to dismiss stage "[a]lthough Plaintiffs did not identify any cases in which County officers were found liable on excessive force claims" because the cases either settled or were still pending). Plaintiff has plausibly alleged at this stage that Defendant City of Dunbar has either failed to adequately train its officers or maintains a persistent practice of allowing Defendant officers to use excessive force. Accordingly, Defendants' motion is **DENIED** as to Count IV.

### C. Counts V and VI: Negligent Training and Supervision

Plaintiff initially brings two claims against Defendant City of Dunbar for negligent training and negligent supervision.[2] Negligent training and supervision "are governed by basic negligence principles." *Doe v. Cabell Huntington Hosp. Inc.*, No. CV 3:23-0437, 2023 WL 8529080, at *2 (S.D. W. Va. Dec. 8, 2023). To bring these claims, a plaintiff must allege "that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Id.* at *3 (quoting *Biser v. Mfrs. & Traders Tr. Co.*, 211 F. Supp. 3d 845, 856 (S.D. W. Va. 2016)). "West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence." *Carroll v. USAA Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017); *see also C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 791 (W. Va. 2021) (Wooton, J., concurring in part, dissenting in part) ("The majority holds—unequivocally and without reference to any facts, unique or otherwise—that intentional misdoing on the part of an employee, even under circumstances where it was foreseeable to the employer, cannot form the basis of a negligent supervision claim.").

---

[2] The court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. For Plaintiff's state law claims, I will apply West Virginia state substantive law. *See Erie. R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Plaintiff's municipal liability claim is near identical to his claims for negligent training and negligent supervision. Plaintiff agrees, and "recognizes significant overlap in his *Monell* municipal liability claim and his state-law claims for negligent training and supervision." [ECF No. 19, at 13]. For these reasons in part, Plaintiff has elected to withdraw his claims for negligent training asserted in Count V and the claim for negligent supervision asserted in Count VI. Accordingly, Defendants' motion as to Count V and Count VI is **GRANTED**.

D. *Count VII: Civil Conspiracy*

Finally, Defendants assert that Plaintiff's civil conspiracy claims fail as a matter of law and should be found barred by the intra-corporate conspiracy doctrine.

To establish a claim for civil conspiracy, an individual must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations must reasonably lead to the inference that the defendants "shared the same conspiratorial objective," meaning that they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

A § 1983 conspiracy claim may be barred by the intra–corporate conspiracy doctrine, which states that "employees, when acting in the scope of their employment, cannot conspire among themselves." *Roberts v. Ballard*, No. 2:15-CV-15458, 2017 WL 896983, at *5 (S.D. W. Va. Mar. 7, 2017) (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 224 (4th Cir. 2004). For example, in *Veney v. Ojeda*, a court dismissed a conspiracy claim against two police

officers after a plaintiff alleged that the officers conspired to violate his Fourth Amendment rights. 321 F. Supp. 2d, 733, 738–70 (E.D. Va. 2004). The court held that the officers were agents of the police department "and thus cannot legally conspire with one another." *Id.* at 748.

There are two exceptions to the intra-corporate conspiracy doctrine: (1) "if agents perform unauthorized acts in furtherance of a conspiracy"; and (2) if defendants have "an independent personal stake in achieving the corporation's illegal objective." *Roberts*, 2017 WL 896983, at *6. However, "the court need not determine whether one of these exceptions applies because Plaintiff does not adequately plead a conspiracy among the Defendant Officers." *Reese v. Hannah*, No. 2:23-cv-00805, 2024 U.S. Dist. LEXIS 135442, at *20 (S.D. W. Va. Feb. 29, 2024). Similar to the case in *Reese*, Plaintiff failed to include factual allegations as to *how* the officers engaged in a conspiracy and instead relies on bare legal conclusions that restate the elements of the cause of action. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987) ("[M]ere allegations of a conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient."); *Id.* In his Complaint, Plaintiff makes no factual allegations regarding the potential civil conspiracy. [ECF No. 1, at 36–37]. Plaintiff only states the following regarding facts within the conspiracy:

> As detailed above, Defendants Kendall, Shafer and Oxley, acting within the scope of their respective employments, engaged in a civil conspiracy to conceal and mischaracterize their actions of excessive force, and to otherwise protect themselves from revealing their unlawful actions toward Anthony Coleman. This conspiracy and pattern of conduct between and among the Defendant Officers was designed to prevent discovery of the true nature of the Defendants' actions from coming to light and being investigated.

[ECF No. 1, at ¶ 199]. In addition to failing to put forth factual allegations to how the Defendant officers conspired jointly, Plaintiff also fails to mention specifically how each officer took necessary steps to conceal information from discovery after the instant offense. As such, Defendants' motion as to Count VII is **GRANTED**.

14

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion is **GRANTED** in part and **DENIED** in part. Specifically, the Motion is **DENIED** as to Counts I, II, III, IV and **GRANTED** as to Counts V, VI, and VII.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:      July 14, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE